7791

CHILDS v. CITY OF COLUMBIA.

1. INJUNCTION.—In an action for injunction only, the same rule applies as to temporary injunction as in other actions of like nature. Essential conditions to granting temporary injunctions stated.

2. CITIES AND TOWNS.—The statutes conferring on municipalities the authority to contract to furnish water to nonresidents does not impose on the municipality the duties of public service corporations as to nonresidents, and when such contracts are made the only factor to be considered is the interest of the municipality.

3. CONTRACT.—Where parties to a contract express no period for its duration and no definite term can be implied from the nature of the contract or the surrounding circumstances, the contract may be terminated by either on his giving reasonable notice of such intention to the other.

Before SHIPP, J., Richland, September, 1910. Affirmed.

Action by W. G. Childs against the City of Columbia. Plaintiff appeals.

*Mr. D. W. Robinson,* for appellant, cites: *Plaintiff was entitled to restraining order until hearing:* 69 S. C. 159; 67 S. C. 93; 62 S. C. 221; 60 S. C. 569; 75 S. C. 224; 82 S. C. 271; 54 S. C. 473. *A city has a right to dispose of its surplus water:* 34 L. R. A. 525; 105 Fed. 1; 66 Fed. 140; 30 Enc. 428; Dill. on Mun. Corp., sec. 26; 82 S. C. 292; 1 Farn. on Waters and Water Rights 814; 3 Abb. on Mun. Corp. 2095; 184 Pa. St. 594; 13 Pa. St. 175; 31 L. R. A. 794; 163 U. S. 589; 51 Fed. 321. *A municipality is bound by a contract it makes in regard thereto:* 13 C. C. A. 379; Dill. on Mun. Corp. sec. 935. *How is a contract made?* 1 Farn. on Waters and Water Rights 833; 58 N. E. 785; 49 Atl. 227; 24 S. W. 1125; 3 Abb. on Mun. Corp. 2095; 132 N. Y. Ap. Div. 940; 9 Cal. 454. *It must be reasonable and without discrimination:* 63 S. E. 826; 29 L. R. A. 377; 30 S. E. 319; 81 S. C. 443; 42 S. E. 419; 54 At. 6; 9 Mun. Corp. Cas. 875; 30 Ency. 426; 110 U. S. 347; 1 Farn. 855, 865, 851, 832, 159d; 38 S. W. 1113; 14 L. R. A. 427; 47 N. J. L. 333; 82 S. C. 292; 69 L. R. A. 311. *Court may inquire into the reasonableness of such contract:* 94 U. S. 113; 30 S. E. 319; 110 U. S. 347; 14 L. R. A. 427; 2 Mun. Corp. Cas. 488; 1 Farn. 857, 865; 9 Mun. Corp. Cas. 875; 116 U. S. 307. *Remedy to prevent an excessive charge for cutting off water:* 42 S. E. 419; 30 S. E. 319; 20 Ency. 426; 45 La. Ann. 798; 165 N. Y. 32; 29 L. R. A. 377; 81 S. C. 447; 3 Abb. Pr. 76; 3 Hun. 532; 112 Ala. 260; 9 S. W. 384.

*Mr. Christie Benet,* contra, cites: *As to right to have the injunction continued:* 69 S. C. 554; 82 S. C. 270; 75 S. C. 224; 84 S. C. 51; 86 S. C. 160.

February 28, 1911.  The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought by W. G. Childs to enjoin the city of Columbia from cutting off his water supply or charging him a water rate alleged to be exorbitant, discriminatory and unreasonable. Judge Shipp, on September 28, 1910, made a temporary restraining order, in which the city was required to show cause why an injunction should not be granted. On hearing the return of the city, Judge Shipp refused to enjoin it and rescinded the restraining order. The appeal is from this order refusing the injunction.

The appellant first contends that, as the complaint was for injunction only, the Circuit Judge had no discretion to refuse to enjoin the defendant until the trial of the cause.

The right to an injunction does not arise merely because the plaintiff asks for injunction, and nothing more, nor because the plaintiff alleges that without the injunction he would suffer irreparable injury. This results from the truism that all judicial action is taken on the conviction of the Judge as to the rights of the parties, and not on the opinion of the parties themselves as to their rights. Hence there are two essential conditions to the granting of even temporary injunctions: First, the complaint must allege facts which appear to be sufficient to constitute a cause of action for injunction; and, second, on the entire showing from both sides it must appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation. *Alderman* v. *Wilson,* 69 S. C. 159, 48 S. E. 85; *Northrop* v. *Simpson,* 69 S. C. 554, 48 S. E. 613; *Marion C. L. Co.* v. *Tilghman L. C.,* 75 S. C. 221, 55 S. E. 337; *Boyd* v. *Trexler,* 84 S. C. 51, 65 S. E. 936; *Keller* v. *Tiner,* 86 S. C. 160.

Analysis of the complaint, we think, shows conclusively that the plaintiff has failed to state a cause of action against the city of Columbia. The case as pre-

sented by the complaint is that the city of Columbia, owning and operating a water supply system, has for years past and up to the present time furnished water for domestic and other purposes to persons and corporations. The plaintiff lives outside of the city limits, but the city agreed about ten years ago to furnish water for his residence and other houses occupied by others as residences, but belonging to plaintiff, also beyond the corporate limits, "at the customary and usual price." The plaintiff in pursuance of the agreement at his own expense connected his houses by pipe line with the city water mains; and the city supplied water to the plaintiff for a number of years, receiving from him prompt payment of the "usual and customary charges." About two years ago the city doubled the charge it had before made to the plaintiff—which was the charge made to most of its customers—but the plaintiff regularly paid the increased charges and stands ready to continue to pay any reasonable charge. "On or about the 23d day of September, A. D. 1910, the plaintiff received notice from the defendant that, beginning October 1, 1910, said defendant would charge a minimum rate of $3.00 per month for each of the dwellings of the plaintiff, connected with and supplied by water from the said city, which rate is more than four times the maximum charged, and to be charged by said city to the general customers and consumers; and the said city, as the plaintiff is informed and believes, threatens to cut off the supply of water to the plaintiff if he does not agree to this excessive and exorbitant rate." In the last paragraph of the complaint the allegation is made that "said proposed rate of charges is excessive, unreasonable and discriminatory, and in violation of the contract between plaintiff and defendant." The relief asked is "that defendant be enjoined and restrained from cutting off said water supply and also charging and requiring the plaintiff to pay said exorbitant and unreasonable charge."

Evidently the complaint is framed on the theory that the city of Columbia is to be considered with respect to the contract alleged as if it were a private business corporation, bound by any contract made by the city authorities to furnish water beyond the city limits. Counsel for appellant has submitted an elaborate argument, supported by many authorities, in support of that theory. Assuming the correctness of this position, it does not by any means follow that the city occupied towards the plaintiff, a nonresident, the relation of a public service corporation, under obligation to contract with him for his water supply at a reasonable rate without discrimination.

All powers and privileges conferred by the Constitution and statutes on municipal corporations must be held to be limited in their exercise to the territory embraced in the municipal boundaries and for the benefit of the inhabitants of the municipality, unless the Constitution or statute expressly provides that such powers and privileges may be exercised beyond the corporate boundaries or for the benefit of nonresidents. 28 Cyc. 266; Dillon Mun. Cor., sec. 565. Applying this principle, the provision of section 5, article 8, of the Constitution, that "cities and towns may acquire, by construction or purchase, and may operate, waterworks systems and plants for furnishing lights to individuals, firms and private corporations for reasonable compensation," cannot be held to mean that cities and towns, by exercising the power of operating waterworks, assume to nonresidents of the city the relation and duties of a public service corporation. The statute passed in pursuance of the constitutional provision, Civil Code, section 2008, expressed the limitation of duty to residents of the city implied in the Constitution by the provision that the construction and operation of municipal waterworks should be "for the use and benefit of said cities and towns and its citizens." The later statute of 1907 (25 Stat. 608), even if it be held to apply to a contract for water for domestic purposes, does

not alter the case. That statute, conferring on cities and towns the authority to contract to furnish water to non-residents, did not impose upon the municipality the duties of public service corporations in their relation to non-residents, for the statute expressly provides that the municipalities are authorized and empowered "to furnish the same upon such terms, rates and charges as may be fixed by the contract and agreement between the parties in this behalf, either for lighting or for manufacturing purposes, when in the judgment of said city or town council it is for the best interest of the municipality so to do." Thus the making of the contract and the terms, rates and charges, are left entirely to the discretion of the municipal authorities, and the interest of the municipality is the sole factor to be considered in deciding whether the contract shall be made, and if so, on what terms, and for what period, not exceeding two years.

Assuming that the city authorities had the power to contract with the plaintiff to furnish water for his residence and other houses, and that the duty devolves on them of contracting for the sale of any excess of the city's water supply beyond the municipal needs and the needs of its inhabitants, it is, nevertheless, perfectly obvious that the duty to sell the excess of its water supply did not import an obligation to make a contract with any particular person at a reasonable price, but on the contrary did import an obligation to sell its surplus water for the sole benefit of the city at the highest price obtainable: it was a duty not owed to outsiders, but exclusively to inhabitants and tax-payers of the city. It follows that the plaintiff as a mere nonresident had no rights whatever against the city except such as he may have acquired by contract. In other words, the city was under no public duty to furnish water to the plaintiff at reasonable rates, or to furnish it at all, and to obtain the injunction the plaintiff must show that the city is about to violate its contract with him.

The fatal defect of the complaint is that it alleges a contract indefinite as to the price and duration of the service, conferring no right on the plaintiff to require the service of the city beyond the day fixed by reasonable notice of its intention to increase the rate charged or to cease altogether to furnish water. The allegation as to the rate agreed on for the water is not that there was a fixed price, but only that the water was to be furnished "at the usual and customary price." That this was not a definite charge, but one subject to change by the city, is shown by the fact that the plaintiff alleges that he continued to pay the charges when they were doubled by the city. But, waiving this feature of indefiniteness, there is no allegation whatever that the plaintiff was bound to take or that the city was bound to furnish water for any specified time. Where the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually. In such a case the Courts hold with practical unanimity that the only reasonable intention that can be imputed to the parties is that the contract may be terminated by either on giving reasonable notice of his intention to the other. *Stonega C. & C. Co.* v. *Louisville & N. R. R. Co.* (Va.), 9 L. R. A. (N. S.) 1184; *Chattanooga R. & C. Co.* v. *Cincinnati N. O. & T. P. R. R. Co.,* 44 Fed. 456; *Barney* v. *Indiana R. Co.,* 61 N. E. 194; *Baldwin* v. *Kansas City M. & B. R. Co.,* 11 Ala. 515, 20 Sou. 349; *Marble* v. *Standard Oil Co.,* 169 Mass. 553, 48 N. E. 783; *Bates Machine Co.* v. *Bates,* 192 Ill. 138, 61 N. E. 518; *Kenderdine H. C. F. Co.* v. *Plumb,* 182 Pa. 463, 38 Atl. 480; *Philadelphia & R. R. Co.* v. *River Front R. C.,* 168 Pa. 357, 31 Atl. 1098.

The only two cases which could be thought to give support to the position that a contract, silent as to duration,

binds the parties perpetually and may not be terminated on reasonable notice are *Mississippi River L. Co.* v. *Robson*, 69 Fed. 773, and *Great Northern R. Co.* v. *Manchester S. & N. L. Co.*, 5 DeG. & S. 138, L. R. 7, H. L. 550. Critical examination of these cases will show that the peculiar circumstances of the parties and the nature of the consideration led to the inference that the arrangement for mutual benefit was intended to be perpetual.

The return, which was not traversed, alleges that reasonable notice was given by the city of its intention to discontinue furnishing plaintiff water unless he would pay therefor at the rate of $3.00 per month, and the exceptions do not raise any question of reasonable notice.

The conclusion that the complaint on its face shows that the plaintiff is not entitled to an injunction makes unnecessary consideration of the defense of *ultra vires* set up in the answer.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.